Not for Publication

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **EVA M. CORONEL,** | |
| **Plaintiff,** | **Civil Action No.: 19-8492 (ES) (MAH)** |
| **v.** | **OPINION** |
| **BANK OF AMERICA, N.A.; TRANSUNION, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.,** | |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

      Plaintiff Eva M. Coronel sues Defendants Bank of America, N.A. ("BOA"), TransUnion, LLC, and Experian Information Solutions, Inc. ("EIS") for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (D.E. No. 65, Second Amended Complaint ("SAC")). EIS moves to compel arbitration and to stay this action pending completion of arbitration. (D.E. No. 168; D.E. No. 168-1, Moving Brief ("Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the motion is **DENIED**.

### I.    BACKGROUND

      As alleged in the SAC, Plaintiff is a victim of identity theft. (*Id.* ¶ 12). "[T]he identity thief," she claims, "opened a credit card with BOA," which "[s]ubsequently[] began reporting negative information about the card to TransUnion and [EIS]." (*Id.* ¶ 13). Plaintiff maintains that, even after she filed several disputes informing Defendants BOA, EIS, and TransUnion of the identity theft, they continued to report negative information about her. (*Id.* ¶¶ 15–16 & 18–26).

Accordingly, Plaintiff alleges that Defendants failed to conduct a reasonable investigation into her dispute. (*Id.* ¶¶ 16, 19, 21, 24 & 26). She thus sues them for negligent and willful violations of the FCRA. (*Id.* ¶¶ 37–41).

Plaintiff originally filed this action in state court, but Defendants removed it to federal court on March 3, 2019. (D.E. No. 1). On October 31, 2019, Magistrate Judge Hammer ordered that "any motion to compel arbitration in *Coronel v. Citibank North America* shall be filed on or before December 28, 2019." (D.E. No. 34). After that deadline passed, on May 26, 2021, EIS sought leave to file a motion to compel arbitration and to stay discovery. (D.E. No. 95). The Court granted leave, and EIS filed the motion on June 16. (D.E. No. 103). On July 7, the Court terminated the motion pending limited discovery on the issue of "whether Experian waived its right to compel arbitration through its litigation conduct." (D.E. No. 110 at 2). After the close of limited discovery, EIS requested leave to file a renewed motion to compel arbitration on November 12. (D.E. No. 158). The Court granted leave, and EIS filed the pending motion on January 14, 2022. (D.E. No. 168).

## II.   LEGAL STANDARD

Where a court must refer beyond the pleadings to decide a motion to compel arbitration, the motion is properly analyzed under the summary judgment standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on the motion, a court must view the evidence in the light most favorable to the nonmoving party and draws all inferences in favor of that party. *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for

the non-movant. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). At the summary judgment stage, a court is not permitted to make credibility determinations or weigh the evidence. *Id.* at 428–29. In the context of a motion to compel arbitration, "summary judgment is not warranted" where "'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is 'a genuine dispute as to the enforceability of the arbitration clause.'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

## III.   DISCUSSION

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). A court must order the parties to proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Plaintiff admits there is an agreement to arbitrate.  In particular, she admits that, when trying to correct her trade line in March 2018, she enrolled in CreditWorks—a credit monitoring service operated by Experian Consumer Services ("ECS"), an affiliate of EIS.  (D.E. No. 188, Opposition Brief ("Opp. Br.") at 3).  Upon her enrollment, she consented to a Terms of Use Agreement ("TOU") that, among other things, contained an arbitration provision.  (D.E. No. 168-5, Ex. 3 at 7–9 (ECF pagination)).  However, Plaintiff argues that EIS waived its right to compel arbitration by delaying its motion for over eighteen months and by otherwise extensively participating in this litigation.  (Opp. Br. at 8–23).[1]  EIS responds that the Court does not have the authority to assess its waiver because the TOU delegates the issue of waiver to the arbitrator, and that in any event it did not waive its right to compel arbitration.  (Mov. Br. at 15–20).  Plaintiff responds that the TOU does not delegate waiver to an arbitrator and that the issue is for a court to decide.  (Opp. Br. at 4–8).  The Court agrees with Plaintiff that the TOU does not sufficiently delegate the issue of waiver to the arbitrator, and further agrees that EIS waived its right to compel arbitration.

### A.    Delegation

There are two types of questions concerning gateway arbitrability: substantive and procedural.  *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 216 (3d Cir. 2007).  Substantive questions, absent an agreement to the contrary, are decided by a court.  *Id.*  Substantive questions are limited to gateway disputes that parties would likely expect a court to decide—such as, "whether the parties are bound by a given arbitration clause."  *Id.*  Conversely, procedural gateway

---

[1]    Plaintiff also argues that EIS is distinct from ECS and therefore cannot enforce the TOU.  (Opp. Br. at 23–29).  Because the Court agrees that EIS waived any right it had to compel arbitration, the Court does not address this argument.

questions—such as, "whether prerequisites such as time limits, notices, laches, estoppel, and other conditions precedent to an obligation to arbitration have been met"—are forum-specific and presumptively for an arbitrator to decide.  *Id*.  Beyond those two questions are other procedural issues, such as waiver, "that arise only after the parties have bypassed a gateway determination of substantive arbitrability by the arbitrator and actively litigated the underlying dispute in court." *Id.* at 222.  The FAA, the Third Circuit has said, "did not intend to upset the 'traditional rule' that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court."  *Id*. at 217–18.  Thus, waiver is presumptively for a court to decide.  *Id*. at 221.  And a court decides waiver unless "the parties' arbitration agreement contains 'clear and unmistakable evidence' of . . . an intent" to delegate the issue of waiver to the arbitrator.  *Id*.  This standard is "onerous."  *Id*.

For example, in *Ehleiter*, the Third Circuit held that a broadly worded arbitration provision did not contain a clear and unmistakable intent to delegate the issue of waiver to the arbitrator.  *Id*. at 221–22.  In particular, the arbitration provision in *Ehleiter* provided:

> *All claims or matters* arising out of or relating in any fashion to this Agreement, to the breach of this Agreement, or to Employee's dealings with Employer, Employee's employment or the suspension or termination of Employee's employment with Employer *shall be considered arbitrable*.  Arbitrable matters include, but are not limited to, the following: claims for wrongful or retaliatory discharge or wrongful treatment under Virgin Islands or Federal law, including, but not limited to, the Civil Rights Acts of 1866, 1871, 1964, and 1992, Title VII, the Equal Employment Opportunity Act, the Equal Pay Act, the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and Titles 10 and 24 of the Virgin Islands Code; claims for employment discrimination under Virgin Islands law or Federal law; defamation, infliction of emotional distress, and all other matters sounding in tort; claims relating to Employee benefits; and *the issue of arbitrability of any claim or dispute*.

*Id.* (emphasis added).  Even though the arbitration provision provided that "[a]ll claims or matters,"

including the issue of "arbitrability of any claim or dispute," were for the arbitrator, the Third

Circuit held there was not "a clear and unmistakable intent to have an arbitrator decide procedural

questions of arbitrability that arise only after the parties have bypassed a gateway determination

of substantive arbitrability by the arbitrator and actively litigated the underlying dispute in court."

*Id.* at 222.  "There are no references," the Third Circuit explained, "to waiver of arbitration."  *Id.*

Thus, the Third Circuit concluded, "[w]e cannot interpret the Agreement's silence regarding who

decides the waiver issue here 'as giving the arbitrators that power, for doing so . . . [would] force

[an] unwilling part[y] to arbitrate a matter [he] reasonably would have thought a judge, not an

arbitrator, would decide.'"  *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938,

945 (1995)).

Here, as in *Ehleiter*, the delegation provision of the TOU does not delegate the issue of

waiver to the arbitrator.  The TOU's delegation clause is similarly broad:

> All issues are for the arbitrator to decide, including the scope and
> enforceability of this arbitration provision as well as the
> Agreement's other terms and conditions, and the arbitrator shall
> have exclusive authority to resolve any such dispute relating to the
> scope and enforceability of this arbitration provision or any other
> term of this Agreement including, but not limited to any claim that
> all or any part of this arbitration provision or Agreement is void or
> voidable.

(D.E. No. 168-5, Ex. 3 at 8 (ECF pagination)).[2]  While the delegation provision says "[a]ll issues

are for the arbitrator to decide," it does not evince a clear and unmistakable intent to have the

arbitrator decide the issue of waiver.  As in *Ehleiter*, the delegation provision does not mention

waiver explicitly.  (*Id*. at 7–9).  And there is no indication that "[a]ll issues" include those issues

---

[2]     The TOU was revised on November 30, 2021, but contains a materially similar delegation clause as the above
TOU.  (D.E. No. 168-6, Ex. 4, at 9 (ECF Pagination)).  Despite this action being filed before she agreed to the later
version, the Court assumes it applies.

that arise only during litigation.  As the Third Circuit declined to do in *Ehleiter*, the Court will not interpret the TOU's "silence regarding who decides the waiver issue here 'as giving the arbitrators that power.'"  482 F.3d at 222 (quoting *First Options*, 514 U.S. at 945).

EIS does not attempt to distinguish *Ehleiter*.  Instead, EIS distinguishes *Marie v. Allied Home Mortgage*, 402 F.3d 1 (1st Cir. 2005), a case from which *Ehleiter* drew support, arguing that the TOU incorporates a broader delegation provision than in *Marie* because the delegation provision in the instant TOU says "all issues."  (D.E. No. 196, Reply Brief ("Reply") at 14–15).  But this argument ignores the provision in *Ehleiter*, which similarly said "all claims or matters."  482 F.3d at 221–22.[3]

Because the TOU does not contain a clear and unmistakable intent for the issue of waiver to be delegated to an arbitrator, the issue of waiver is for the Court to decide.

**B.     Waiver**

Now the Court must consider whether EIS waived its right to compel arbitration.  Waiver is the "'intentional relinquishment or abandonment of a known right.'"  *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022) (internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).  As recently clarified by the Supreme Court, the waiver analysis focuses "on the actions of the person who held the right."  *Id*.  "The court seldom considers the effects of

---

[3]      EIS also relies on *Coulter v. Experian Information Solutions, Inc.*, No. 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021), where the court examined an identical agreement to the TOU and held the issue of waiver was to be resolved by an arbitrator.  (Mov. Br. at 16).  But, as Plaintiff points out, *Coulter* did not consider *Ehleiter*.  (Opp. Br. at 7).  And *Ehleiter* is binding on this Court.

those actions on the opposing party." *Id.*[4]   Furthermore, waiver is informed by the "circumstances and context of each case." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 452 (3d Cir. 2011).

Under this standard, EIS waived its right to compel arbitration. In reaching this conclusion, the Court principally relies on the following three factors.

First, EIS was reasonably aware of its right to compel arbitration, at the latest, in December 2019. As Plaintiff argues, EIS understands that every customer who uses CreditWorks necessarily agrees to an arbitration provision, and EIS was (at the latest) aware that Plaintiff used CreditWorks in December 2019 when it produced documents in discovery. (Opp. Br. at 10 (citing D.E. No. 188-1, Ex. 5 at 5)).[5]

Second, EIS's motion to compel arbitration is egregiously untimely. Judge Hammer set a deadline to move to compel arbitration by December 28, 2019. (D.E. No. 34). At that time, as explained, EIS was reasonably aware of its right to move to compel arbitration. Yet, EIS first moved to compel arbitration on June 16, 2021, eighteen months past the deadline (and more than

---

[4]      This standard reflects a recent change in the law.  Before the Supreme Court decided *Morgan*, prejudice was crucial to the waiver analysis. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir. 1992).  In *Hoxworth*, the Third Circuit outlined the following factors relevant to prejudice: (i) timeliness; (ii) the extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (iii) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (iv) the extent to which a party seeking arbitration engaged in non-merits motion practice; (v) the party's acquiescence to the court's pretrial orders; and (vi) the extent to which the parties engaged in discovery. *Id.* at 926–27.

But in *Morgan*, the Supreme Court held that prejudice takes no part in the waiver analysis under the FAA. *See* 142 S. Ct. at 1712–13.  The Court is bound by *Morgan*, and the parties do not dispute that *Morgan* applies here. *See US Airways, Inc. v. McCutchen*, 663 F.3d 671, 677 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 88 (2013). Accordingly, without assessing prejudice, the Court will determine whether EIS waived its right to arbitrate.

However, the Court agrees with EIS that the *Hoxworth* factors are not irrelevant under *Morgan*'s standard for waiver—that being, whether the moving party intentionally relinquished or abandoned its right to arbitration. (D.E. No. 218, Supplemental Letter, at 2).  Said another way, many of the *Hoxworth* factors relating to the moving party's litigation conduct—such as the timeliness of its motion to compel arbitration and the extent to which it contested the plaintiff's claims on the merits, participated in merits and non-merits-based discovery, and assented to pretrial orders—should still inform a court's determination regarding waiver.  Albeit, those factors should be applied to the appropriate standard.

[5]      Even if EIS was not aware at the time, it was certainly aware on November 20, 2020—more than six months before moving to compel arbitration in this case—when it invoked an identical arbitration provision and filed a motion to compel arbitration in another case. (*See* Motion to Compel, *Coulter v. Experian Information Solutions, Inc.*, No. 20-1814 (E.D. Pa. Nov. 20, 2020), D.E. No. 17).

two years after this case was removed to federal court).  (D.E. No. 103).  This eighteen-month delay, without excuse, indicates that EIS did not intend to arbitrate the dispute.  EIS has failed to give a reason for its delay, and counsel for EIS admitted in her deposition that there is no reason EIS could not have moved to compel sooner.  (D.E. No. 188-1, Ex. 3, at 31:21–32:14).  Furthermore, EIS did not assert an arbitration defense in either its original answer or amended answer.  (D.E. No. 11; D.E. No. 67).  Notably, EIS filed its amended answer on August 17, 2020, nearly seventeen months before the instant motion.  (D.E. No. 67).  "[C]ourts have not hesitated to hold that the right to arbitrate has been waived . . . where the defendant had 'invoked the litigation machinery' by, *inter alia*, filing an answer without asserting arbitration as an affirmative defense . . . ."  *Hoxworth*, 980 F.2d at 926.  This conduct warrants the inference that EIS intentionally relinquished or abandoned its right to arbitration.  To hold otherwise would reward EIS for unreasonably delaying its motion to compel arbitration.

Third, EIS's conduct during litigation, and particularly discovery, shows that it intentionally relinquished or abandoned its right to arbitration.  Before moving to compel arbitration, EIS participated in a case management conference and several discovery conferences, attended six court conferences, drafted four Rule 37 letters, took part in numerous joint status letters, and deposed Plaintiff.  (Opp. Br. at 12–13).  EIS's participation in discovery and otherwise throughout this litigation weighs in favor of the finding that it waived its right to compel arbitration.

EIS argues that it did not extensively engage in discovery, and that any discovery it conducted after it moved to compel arbitration does not factor against it.  (Mov. Br. at 20–21).  However, the Court recounted above only the pre-motion-to-compel discovery, and *Ehleiter* and other cases have found waiver based on similar discovery records.  *See Ehleiter*, 482 F.3d at 223

(noting that the parties engaged in extensive discovery, and holding that the defendant therefore waived arbitration, where "both sides exchang[ed] several sets interrogatories, requests for production of documents, and expert reports, [and] participat[ed] in depositions of numerous witnesses"); *Gray Holdco*, 654 F.3d at 449–50; *Hoxworth*, 980 F.2d at 926–27.

EIS also argues that its motion to compel arbitration is timely because the operative version of the TOU came into existence on November 20, 2021.  (Reply at 14–15).  This argument is not persuasive for two reasons.

First, EIS waives this argument by raising it for the first time in reply.  In its moving brief, EIS effectively conceded, albeit tacitly, that its motion was untimely.  (Mov. Br. at 21–22).  In particular, EIS did not seek to justify its delay but instead argued lack of prejudice under old law. In particular, EIS argued:  "This case was filed in March 2019.  EIS moved to compel arbitration in June 2021.  While Ms. Coronel may point to this delay as evidence of waiver, '[d]elay alone, without any prejudice to the opposing party, aside from expense and inconvenience, will not constitute waiver.'"  (*Id.* at 21 (quoting *Windward Agency, Inc. v. Cologne Life Reins. Co.*, No. 95-7830, 1997 WL 164269, at *4 (E.D. Pa. Apr. 1, 1997))).  EIS further likened itself to movants who delayed their motions for several months but were found not to prejudice their opponent.  (*Id.* at 22).  Accordingly, by making its timing argument for the first time in reply (after it essentially conceded the issue in its moving brief), EIS waived the argument.  *See Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.2 (D.N.J. 1999) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.").

Second, assuming the November 2021 TOU is operable, even though this action was removed to federal court in 2019, EIS's timing argument fails on its own terms.  While the November 2021 TOU "***did not exist*** until November 2021," and while a party cannot waive rights

it does not have (*see* Reply at 15–16 (emphasis in original)), EIS had the right to compel arbitration as early as March 2018. As EIS stated in in its moving brief, "[e]very version" of the TOU required arbitration. (Mov. Br. at 4). In fact, EIS first moved to compel arbitration in July 2021 based on an earlier version of the TOU—*before* the most recent TOU became operable in November 2021. (D.E. No. 103). Thus, EIS had the right to compel arbitration as early as March 2018, when Plaintiff originally agreed to the TOU, yet it failed to assert those rights in a timely manner and has no justification for its unreasonable delay.[6]

In sum, by unreasonably delaying its motion for at least eighteen months, and by extensively participating in this litigation, EIS has waived its right to compel arbitration.

## IV.    CONCLUSION

For the above reasons, EIS's motion to compel arbitration and stay this action (D.E. No. 168) is **DENIED**. An appropriate Order follows.

Dated: August 17, 2022

**Hon. Esther Salas, U.S.D.J.**

---

[6]    For a contrary conclusion, EIS cites *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 699 (6th Cir. 2019). (Reply at 16). But the Sixth Circuit in *PolyOne* found that a party cannot waive a right that does not exist. 937 F.3d at 699. It did not hold that reaffirmation of a party's preexisting right mitigates its lack of diligence.